John Tedeschi appeals from a judgment, entered after cross motions for summary judgment, reversing the allowance of a special permit by the zoning board of appeals of Scituate (board).[4] We affirm.
The necessary facts are undisputed and, as summarized here, are drawn from the findings of the trial judge. The plaintiffs are abutters to a lot located at 0 Foam Road in Scituate, which is owned by John and Jane Stonefield. On behalf of the Stonefields, Tedeschi, a local builder and developer, applied for a special permit under Scituate's bylaw § 470.9 to build a two-story single family house on the lot. Section 470.9 provides in pertinent part:
"If any land in the Flood Plain and Watershed Protection District is proven to the satisfaction of the Board of Appeals ... as being in fact not subject to flooding and not unsuitable because of drainage conditions for any use otherwise permitted under the applicable provisions of the zoning bylaw, ... the Board of Appeals may issue a special permit for the proposed use."
The lot in question here is located in the town's flood plain and watershed district (FPWD).
After the board granted a special permit on December 11, 2012, the plaintiffs filed a G. L. c. 40A, § 17, complaint in the Superior Court. While the Superior Court action was pending, the Supreme Judicial Court decided Doherty v. Planning Bd. of Scituate, 467 Mass. 560 (2014), which explained the meaning and breadth of the phrase "in fact not subject to flooding" as it appears in § 470.9. Id. at 567. Accordingly, after conducting a jury-waived trial, the trial judge remanded the matter to the board "to apply the Doherty legal standards to the facts presented." On remand, the board
"reviewed the Special Permit in light of the § 470.9 'subject to flooding' definition established by the SJC in Doherty v. Planning Bd. of Scituate, 467 Mass. 560, 569-570 (2014). In addition, the board considered whether development of the proposed dwelling would be inconsistent with the purposes of the FWPW district set forth in § 470.1, and whether development of the proposed dwelling would violate any of the following public policy concerns: (1) the protection of individuals who develop or occupy land on a flood plain; (2) the protection of other landowners from damage resulting from development in the flood plain; (3) the obstruction of the flood flow; and (4) the protection of the community from land use which requires subsequent expenditures for public works and/or disaster relief."
The board found that the lot is subject to flooding in fact under the definition established by Doherty. But the board also determined that the proposed single-family home did not violate any of the enumerated policy considerations, and again allowed the special permit.
The plaintiffs thereafter filed a new complaint in the Superior Court, appealing this second decision by the board. On cross motions for summary judgment, a different Superior Court judge concluded that, as a matter of law, the board could not grant a special permit under § 470.9 for a lot subject to flooding-in-fact. The judge therefore allowed the plaintiffs' motion for summary judgment, denied the defendant's cross motion, and remanded the matter to the board with instructions to revoke the special permit. This appeal followed.
On appeal, Tedeschi does not challenge the board's factual determination that the lot is in fact subject to flooding in the sense that water rises and overflows on normally dry land. Doherty, 467 Mass. at 569. Instead, he argues that even though the lot is subject to flooding, the board was nonetheless permitted to issue a special permit based on the public policy considerations and purposes expressed in bylaw § 470.1. He rests this argument primarily on the highlighted portion of the following sentence in Doherty: "The standard to be applied by the board in this case -- that the land is 'in fact not subject to flooding,' considered together with the general purposes of the FPWP district and the public policy concerns of development in flood plains, and the existence of judicial review -- has been determined to be precise." Id. at 572. Focusing on the "considered together with" language, Tedeschi argues that policy considerations should be part and parcel of the flooding-in-fact determination.
We are not persuaded. To begin with, this passage in Doherty must be read in the context in which it appears, which is whether the broad definition of flooding-in-fact would render the bylaw unconstitutionally vague. The court concluded that it would not, because the definition is applied in conjunction with the policies and purposes of the bylaw. The quoted passage cannot be reasonably read to mean that policy considerations are to be taken into account in deciding whether a particular lot is subject to flooding. Indeed, such a reading would be contrary to the court's definition of "in fact not subject to flooding" as meaning "all varieties of water rising and overflowing on normally dry land." Id. at 569. Policy considerations are not germane to that definition. To the contrary, that fact-dependent inquiry is to be based on "evidence of the actual occurrences of flooding on the lots," which may come from "testimony of witnesses describing their observations of water on the lots as well as the presence of FEMA flood zones which describe expected occurrences, albeit infrequent, of floodwater and wave action on the lots." Id. at 570. Flooding is not a policy question, but a factual one.
We note further that Tedeschi's argument runs contrary to the plain language of § 470.9, which conditions the board's ability to issue a special permit on a finding that the lot is not subject to flooding in fact. Thus, under § 470.9, the board could grant a special permit only if Tedeschi demonstrated that the lot is "in fact not subject to flooding and not unsuitable because of drainage conditions." See id. at 567 ("Pursuant to the bylaw in this case, once land is determined to be located in the FPWP district, as the lots are here, the construction of new residential dwellings requires a special permit pursuant to § 470.9, which in turn requires the applicant to establish that the land is 'in fact not subject to flooding' ").
To be sure, the board was to consider the policies and purposes of the bylaws in deciding whether to issue a special permit. But those considerations are distinct from the question of whether the lot is subject to flooding in fact. "The board must find that the land is not subject to flooding or not unsuitable because of drainage conditions for a particular use; and that such use will not interfere with the general purposes of the flood plain district, and will not be detrimental to the 'public health, safety, or welfare' " (emphasis added). Turnpike Realty Co. v. Dedham, 362 Mass. 221, 232 (1972).
Judgment affirmed.

Only Tedeschi has filed a brief in this appeal.